

22-196-cv
*Perkins v. City of New York*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of January, two thousand twenty-three.

PRESENT:   DENNIS JACOBS,
                    JOSEPH F. BIANCO,
                    EUNICE C. LEE,
                                *Circuit Judges*.

---

Nicole Perkins,

           *Plaintiff-Appellant*,

           v.                                           22-196-cv

City of New York,

           *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:      DAVID JOHN HOMMEL (Andrew Rozynski, *on the brief*), Eisenberg & Baum, LLP, New York, NY.

FOR DEFENDANT-APPELLEE:      EVA L. JEROME, of Counsel (Richard Dearing & Jamison Davies, of Counsels, *on the brief*), *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

MANDATE ISSUED ON 02/15/2023

Appeal from the United States District Court for the Eastern District of New York (Cogan,

*J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the judgment of the district court is hereby **VACATED**, and the case is

**REMANDED** for further proceedings consistent with this order.

Plaintiff Nicole Perkins, a deaf individual employed as a case manager at defendant-

appellee City of New York's Human Resources Administration ("HRA" or the "City"), appeals

from the district court's judgment granting the City's motion to dismiss her discrimination claims

without leave to amend under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"),

29 U.S.C. § 794, and declining to exercise supplemental jurisdiction over her claims under the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. § 290, *et seq.*; and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq*.  We assume

the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which

we reference only as necessary to explain our decision.

## BACKGROUND[1]

Perkins communicates primarily using American Sign Language and, as such, requires

accommodations to be able to meaningfully complete her professional responsibilities as an HRA

case manager.  These responsibilities include, among others, "constant phone calls and interactions

with her clients as well as other employees and agencies; scheduling and conducting field visits to

clients and agencies; interviewing and consulting clients; [and] evaluating and monitoring cases

and clients."  Joint App'x at 11.  Perkins began her employment at HRA in July 2019 and, on

---

[1]  These alleged facts are taken from the amended complaint and, as discussed *infra*, are assumed to be true for purposes of evaluating whether dismissal was warranted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

August 15, 2019, made a formal accommodation request to HRA for "a monitor or computer with [a] video camera to be used as a [videophone] device for her phone calls" and "access to VRI [Video Remote Interpreting] through her phone or a tablet for her field visits."[2]  *Id.* at 11. Approximately two months later, on October 11, 2019, the City provided the videophone, but Perkins was unable to use it due to firewall issues.  The amended complaint alleges that the City's "IT team knew all along that a cradle point [a wireless router] was needed to bypass the firewall issue for Ms. Perkins' [videophone] because the same IT team had previously installed a [videophone] and cradle point for a different deaf employee." *Id.* at 17.

On October 22, 2019, after the City had failed to provide the cradle point, Perkins requested that the City's Office of Disability Affairs ("ODA") investigate the matter with HRA.  An ODA director exchanged multiple emails with HRA regarding the issues and informed Perkins that "the reason that it's taking so long is that the cradle point they used before to bypass the firewall is only a temporary solution," and that "[HRA was] trying to come up with a permanent solution so that this would never be a problem again." *Id.* at 12.  Over a month later, on November 25, 2019, Perkins sent an email to numerous staff members at HRA outlining her inability to use her office video phone, noting that she "ha[d] been using [her] personal cell phone to make calls and using up [her] data especially using [her personal] video phone" and that she "shouldn't have to ask other workers to make calls for [her]." *Id.* at 13.  She then threatened to file an EEOC complaint if the cradle point was not installed by that Friday.

---

[2]  A videophone "is a device that assists deaf and hard of hearing people who use sign language in communicating with others."  Joint App'x at 10.  It "can be used by a deaf individual to communicate with other deaf individuals, or with [those who can hear] through a sign language interpreter." *Id*.  VRI is "an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images."  28 C.F.R. § 36.104.

On November 29, 2019—three-and-one-half months after Perkins' accommodation request—the City provided her with a cradle point, and she was able to temporarily perform her job functions before the internet speed slowed to a point where the cradle point was no longer functional in early January 2020. A new cradle point was installed on February 4, 2020, but Perkins experienced various other issues with it, all of which HRA told her to resolve with Sorenson, the company that installed the device. Sorenson allegedly told her that the issues were attributable to HRA's firewall, which was preventing the videophone from operating properly. It is further alleged that a manager at Sorenson emailed HRA, and Sorenson explained that its director "could not get [HRA's] IT people cooperating," and that was the reason "why [Sorenson's] staff could not get [the issue] resolved." *Id.* at 14. In February 2020, Sorenson and Perkins allegedly attempted to contact HRA multiple times by email to find a time to address the issue but never received a response. Another email was allegedly sent on February 27, 2020, in which an HRA employee asked a supervisor at HRA to advise on the status of testing of the equipment, but no one replied.

The amended complaint further alleges that, on March 13, 2020, Perkins alerted Sorenson and HRA that there was an issue with her video quality to the point where interpreters critical to her work were having difficulty communicating with her or seeing her due to the lag time and freezing screen. After repeated attempts to reach HRA, Sorenson told Perkins, on April 21, 2020, that HRA "[wasn't] very helpful." *Id.* at 16. Sorenson followed up twice with HRA on the issues Perkins was experiencing but never received a response.

Perkins was on a partially remote schedule for much of the remainder of 2020, as well as for most of 2021, due to the COVID-19 pandemic, and, upon returning full-time to the office on September 13, 2021, her videophone appeared to be working properly, although others speaking

4

to her told her that their screens froze from time to time when using the videophone.  Thus, the

amended complaint alleges that "because [the City] still has not fully taken care of Ms. Perkins'

VP [videophone] issues, she is likely to encounter problems with her VP in the future." *Id.* at 20.

As for the VRI service, Perkins asserts that the City never installed on her laptop the software

"necessary for her field visits with clients." *Id.* at 17.  It does not appear that laptop VRI access

was among the August 2019 accommodation requests cited in the amended complaint.  Perkins

seeks to amend her pleading to include additional allegations regarding the City's purported failure

to accommodate subsequent requests for a laptop and/or iPad with VRI capabilities for use on

"outfield visit[s] to communicate with clients." *Id.* at 34.

Based upon these allegations, Perkins seeks damages and injunctive relief against the City

for violation of her right to reasonable accommodations under Section 504 of the Rehabilitation

Act, as well as under the NYSHRL and the NYCHRL.

On January 13, 2022, the district court granted the City's motion to dismiss the federal

claims under Rule 12(b)(6) and declined to exercise supplemental jurisdiction over the NYSHRL

and NYCHRL claims.  The district court concluded:

> The amended complaint does nothing more than describe an iterative process by
> which HRA made ongoing, reasonable efforts to accommodate plaintiff, some of
> which were at least temporarily successful, subject to conditions imposed by the
> pandemic and the balancing of available technology against the sometimes
> competing concerns of technological security.  For that reason, it does not cross the
> line from "possible" to "plausible."

*Perkins v. City of New York*, 2022 WL 125597, at *1 (E.D.N.Y. Jan. 13, 2022).  The district court

also denied Perkins leave to amend her pleading to add more specific dates and relevant

information regarding her request for the VRI-installed iPad, finding that any such amendments

would be futile. *Id*. at *7–8.

**DISCUSSION**

On appeal, Perkins argues that the district court: (1) erred in concluding that she failed to plausibly allege that the City refused—both actually and constructively—to provide her with reasonable accommodations for her disability as required under the Rehabilitation Act; and (2) improperly denied her leave to amend or supplement her pleading with additional allegations regarding the VRI issue. We agree. As set forth below, we conclude that the allegations in the amended complaint were sufficient to state a plausible failure-to-accommodate claim under the Rehabilitation Act as it relates to her request for a videophone. We also conclude that, on remand, the district court should afford Perkins leave to amend or supplement her pleading to include additional allegations regarding her request for an iPad with VRI.

**I.      Failure-to-Accommodate Claim**

We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(6), "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in plaintiffs' favor." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). Indeed, to survive dismissal, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but allegations that are "no more than conclusions," or "naked assertion[s] devoid of further factual enhancement," will not suffice. *Id.* at 678–79 (internal quotation marks and citation omitted, alteration in *Iqbal*).

In assessing an employment discrimination claim under the Rehabilitation Act, we apply the relevant standards set forth in the Americans with Disabilities Act of 1990 (the "ADA"). *See*

6

29 U.S.C. §§ 791(f), 794(d).  Under both the ADA and the Rehabilitation Act, a plaintiff must

demonstrate the following elements to establish a *prima facie* case of a failure to accommodate:

> (1) [the employee] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of [employee's] disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015); *see also Lyons v. Legal Aid Soc.*,

68 F.3d 1512, 1515 (2d Cir. 1995) (stating that the elements needed to demonstrate a failure-to-

accommodate claim under either the ADA or the Rehabilitation Act are the same).  A plaintiff in

such a case "bears the burdens of both production and persuasion as to the existence of some

accommodation that would allow him [or her] to perform the essential functions of his [or her]

employment."  *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (alterations

adopted, internal quotation marks and citation omitted).  The City concedes that the allegations in

the amended complaint are sufficient to satisfy the first three elements of a *prima facie* case.  The

parties, however, disagree about whether Perkins has satisfied the fourth element:  the employer's

refusal to make accommodations.

As to the fourth element, the Rehabilitation Act "contemplates that employers will engage

in an interactive process with their employees and in that way work together to assess whether an

employee's disability can be reasonably accommodated."  *Brady v. Wal-Mart Stores, Inc.*, 531

F.3d 127, 135 (2d Cir. 2008) (alteration adopted, internal quotation marks and citation omitted).

Moreover, "a refusal of a request for a reasonable accommodation can be both actual or

constructive, as an indeterminate delay has the same effect as an outright denial."  *Logan v.*

*Matveevskii*, 57 F. Supp. 3d 234, 257 (S.D.N.Y. 2014) (internal quotation marks and citation

omitted); *see Austin v. Town of Farmington*, 826 F.3d 622, 629 (2d Cir. 2016) (quoting *Logan* with

approval).  The parties disagree as to whether a plaintiff must plead discriminatory intent to satisfy this element.

To be sure, we have held that "failure-to-accommodate claims do not require proof of discriminatory intent." *Brooklyn Ctr. For Psychotherapy, Inc. v. Phila. Indem. Ins.*, 955 F.3d 305, 312 (2d Cir. 2020).  However, *Brooklyn Center* involved an outright *denial* of the accommodation, not a *delay* in the accommodation.  *Id.* at 309.  We have never specifically addressed in a precedential opinion this intent issue in the context of an alleged delay in providing the accommodation.[3]  Nor are we required to resolve that issue here because we conclude, even assuming *arguendo* that an intent requirement exists with respect to a delayed accommodation claim, that the allegations in the amended complaint are sufficient to survive a motion to dismiss.

Intentional discrimination in the context of the Rehabilitation Act "does not require personal animosity or ill will." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (internal quotation marks and citation omitted).  Instead, "it may be inferred when a qualifying official or policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result." *Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019) (internal quotation marks and citations omitted).  We have emphasized that "such indifference must reflect a deliberate choice among various alternatives and may not be

---

[3]  Numerous district courts in this Circuit have concluded that this intent requirement exists in a delayed accommodation case.  *See Binder v. Pub. Serv. Enter. Grp., Inc.*, 2022 WL 307813, at *13 & 13 n.8 (E.D.N.Y. Feb. 2, 2022) (collecting cases).  We also have reached the same conclusion in a non-binding summary order.  *See Hamedl v. Verizon Commc'ns, Inc.*, 557 F. App'x 68, 70 (2d Cir. 2014) (summary order) (affirming summary judgment for employer on reasonable accommodation claim where the plaintiff "provided no evidence that his request for an ergonomically designed chair was delayed unreasonably due to some discriminatory intent by his employer").  In addition, under the Rehabilitation Act, "[m]onetary damages may be recovered only upon a showing of intentional discrimination." *Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019).  Here, Perkins seeks both monetary damages and injunctive relief.

inferred from mere negligence or bureaucratic inaction." *Id*. at 74 (internal quotation marks and citation omitted).

Here, the amended complaint alleges, among other things, the following: (1) the City failed to provide Perkins with the videophone for approximately two months after her formal accommodation request and then gave her a videophone that it knew would not work without a cradle point;[4] (2) another month elapsed before the cradle point was provided in late November 2019; (3) the videophone stopped functioning in early January 2020; and (4) over the next several months, the City ignored repeated attempts by Perkins and the company that installed the cradle point to have the City's IT personnel address the ongoing issues with the poor functioning of the videophone. Construing these allegations most favorably to Perkins, we conclude that she has plausibly alleged that the City was deliberately indifferent to her need for this accommodation.[5]

In reaching a contrary conclusion, the district court acknowledged that "there was a real breakdown in communications concerning fixing the lingering issue of occasional poor video quality" but attributed that breakdown to the extraordinary situation caused by the pandemic and found that the City's response was reasonable. *See Perkins*, 2022 WL 125597, at \*5; *see also id*. at \*6 ("It is not surprising that defendant was unable to respond to plaintiff's needs during the height of the pandemic . . . . It is thus not unreasonable for plaintiff to experience delay in getting

---

[4] Perkins argues that we should measure the length of delay starting with her initial informal request for an accommodation in June 2019, which was prior to her employment start date at HRA on July 22, 2019. However, we need not address that issue because we conclude that she has stated a plausible claim even if we measure the delay starting on August 15, 2019, when she made the formal request for an accommodation.

[5] Perkins contends that "a failure to engage in a sufficient interactive process where [an] accommodation was, in fact, possible constitutes [by itself] prima facie evidence of discrimination on the basis of disability." Appellant's Br. at 21 (internal quotation marks and citation omitted). We need not decide this issue because Perkins has set forth allegations beyond those related to the interactive process that collectively state a plausible claim that precludes dismissal at this stage.

the accommodation necessary to do her job during the pandemic.").  As a threshold matter, in its

motion papers before the district court, the City did not point to the COVID-19 pandemic as an

explanation for its alleged inaction in addressing the equipment malfunctions and Perkins'

numerous requests for assistance with such malfunctions.  Moreover, the amended complaint

alleges that the City's indifference to her accommodation request began in August 2019,

approximately seven months prior to the pandemic.  In short, determining whether the City's

response to the requested accommodation was reasonable cannot be resolved at the motion to

dismiss stage based upon the allegations in the amended complaint.[6]  The amended complaint

plausibly alleges that the City's response to Perkins's requests was a "deliberate choice" that went

beyond "negligence or bureaucratic inaction."  *Loeffler*, 582 F.3d at 276 (internal quotation marks

and citation omitted).

The City contends that Perkins' claim is implausible because she was able to use the

videophone at certain points during the relevant time period (albeit with alleged significant

technological flaws) and was able to use her personal cell phone to assist with her professional

tasks.  We find this argument unpersuasive.  An ineffective accommodation does not satisfy the

requirements of the Rehabilitation Act.  *See US Airways, Inc. v. Barnett,* 535 U.S. 391, 400 (2002)

("It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for

effectiveness.  An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled

individual's limitations."); *see also Disabled in Action v. Bd. of Elections*, 752 F.3d 189, 198 (2d

---

[6] The City relies almost entirely on cases that were resolved at the summary judgment stage, rather than at the motion to dismiss stage, to support its position.  The one case involving a dismissal under Rule 12(b)(6) upon which the City relies, *Saunders v. Queensborough Cmty. Coll.*, is inapposite because the plaintiff pointed only to the length of the delay to attempt to raise an inference of discriminatory intent.  2015 WL 5655719 (E.D.N.Y. Sept. 24, 2015)  Here, in contrast, Perkins relies on, *inter alia*, the length of the delay plus a series of communications regarding the requested accommodation with the City over many months to state a plausible deliberate indifference claim.

10

Cir. 2014) (explaining that a plaintiff "need not . . . prove that [she has] been . . . completely prevented from enjoying a service, program, or activity to establish discrimination under Section 504 [of the Rehabilitation Act]" (internal quotation marks and citation omitted)). We recognize that an employer cannot be held liable for a failure to accommodate merely because the employee was unable to "perform their assigned role to perfection." *Fink v. N.Y.C. Dep't of Pers.*, 53 F.3d 565, 568 (2d Cir. 1995). Perkins, however, alleges more here. According to the amended complaint, because of the City's failures to accommodate her disability with a functioning videophone over the alleged time period, Perkins, among other things, "has been unable to accomplish certain tasks at her work," "has been unable to equally participate, understand, and/or communicate with clients and others for her work," and "had to cancel appointments and [had] cases [] taken away from her." Joint App'x at 18.

Accordingly, the district court erred in dismissing the Section 504 claim.[7]

**II.     Leave to Amend or Supplement Complaint**

Plaintiff also alleges that the district court improperly denied her motion to either amend or supplement her complaint to include evidence of the City's denial of her request for an iPad to use with VRI for field visits. We agree.[8]

---

[7] We acknowledge that the use of firewalls may be necessary to protect the privacy of the HRA's clientele, many of whom are troubled and vulnerable, and may require confidentiality in order to seek assistance. To the extent removing or bypassing the firewalls is necessary to make effective Perkins's requested accommodations, it may be that such accommodations impose an undue hardship on the City. But the record does not elucidate this point and it is in any event a matter best considered on summary judgment.

[8] Perkins sought leave to amend her complaint under Federal Rule of Civil Procedure 15(a) in her opposition to the City's motion to dismiss, but the district court treated it as a motion to file a supplemental pleading under Federal Rule of Civil Procedure 15(d) because the proposed additions allege events that occurred after the filing of the complaint. Construing the motion under either subsection of Rule 15, we find that the district court erred in denying her request.

11

Although we generally review denial of leave to amend or supplement a pleading for abuse of discretion, where, as here, the district court's denial is "based on a legal interpretation, such as a determination that amendment would be futile," we review the denial *de novo*. *Hutchinson v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). Under Federal Rule of Civil Procedure 15(a) (amendment) and 15(d) (supplementation), leave should be "freely granted." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 256 (2d Cir. 2018); *see also* Fed. R. Civ. P. 15(a)(2).

In her opposition to the City's motion to dismiss, Perkins sought leave to include additional information showing HRA's failure to accommodate her request for an iPad to use with VRI for field visits. The district court concluded that the proposed amendment would be futile because an additional allegation "[t]hat defendant did not respond to plaintiff's accommodation request for an iPad within a month [of the October 2021 request] cannot form the basis of a violation of the Rehabilitation Act without facts suggesting discriminatory intent or an outright refusal." *Perkins*, 2022 WL 125597, at *8. However, in support of her request to amend, Perkins presented an email to the district court suggesting that she made two such requests—one in May of 2021 and a second on October 15, 2021—and that, by the time of her court filing on November 23, 2021, the City had not responded to either request. Thus, Perkins was alleging five months of inaction, not one month.[9] Given that allegation, we cannot conclude that such an amendment would be futile.[10]

---

[9] The City argues that the email suggests that Perkins was unsuccessful in her attempt to make the initial request in May 2021, and thus, no one at HRA was aware of the request until October 15. However, construing the email most favorably to Perkins, it could reasonably be read as stating that, although she was unable to make the request in May 2021 through the HRA portal, she made that request known to HRA officials by other means in that timeframe.

[10] The district court also suggested that the amendment would be futile because plaintiff failed to provide any facts suggesting that the request was reasonable in light of her ability to use her videophone, instead of an iPad, for the same purpose. However, the City did not make that argument in response to Perkins' request to amend, and, in any event, we cannot conclude from the amended complaint that it is implausible

12

Therefore, on remand, the district court should provide Perkins with an opportunity to amend or supplement her complaint with additional allegations regarding her VRI request, including allegations regarding any response by the City since November 2021.

*       *       *

We have reviewed the City's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

that Perkins would need both accommodations to effectively perform all of the aspects of her job, including field visits.

13